IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN WALTERS, JOHN BONILLA, in their respective capacities as Trustees of the OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND, PENSION FUND FOR OPERATING ENGINEERS, PENSIONED OPERATING ENGINEERS HEALTH AND WELFARE FUND, OPERATING ENGINEERS VACATION AND HOLIDAY TRUST FUND, NORTHERN CALIFORNIA PREAPPRENTICE, APPRENTICE AND JOURNEYMAN AFFIRMATIVE ACTION TRAINING FUND, OPERATING ENGINEERS CONTRACT ADMINISTRATION FUND FOR NORTHERN CALIFORNIA, OPERATING ENGINEERS INDUSTRY STABILIZATION TRUST FUND AND OPERATING ENGINEERS MARKET PRESERVATION TRUST FUND,<br><br>        Plaintiffs,<br>    vs.<br><br>STATEWIDE CONCRETE BARRIER, INC., a California corporation; and CHARLES WELLS, an Individual,<br><br>        Defendants. | Case No. C 04-2559 JSW  (MEJ)<br><br>REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT |

## I. INTRODUCTION

Before the Court is plaintiffs Ken Walters, et al.'s ("Plaintiffs") Motion for Default Judgment, filed on February 2, 2005. After careful consideration of Plaintiffs' papers, relevant statutory and case authority, and good cause appearing, the Court hereby RECOMMENDS that the District Court grant default judgment against Statewide Concrete Barrier, Inc. and Charles Wells (collectively "Defendants")[1].

---

[1] The defendant, Charles Wells, is an individual who owns, operates and controls defendant Statewide Concrete Barrier, Inc. Collectively Defendants constitute a single employer for the purposes of the Default Judgment.

## II. BACKGROUND

The Court incorporates the factual background of this case as set forth in Plaintiffs' moving papers. Plaintiffs are trustees of the Trust Funds named in the caption. Each of the Trust Funds is an employee-benefit plan organized pursuant to Sections 302(c)(5), 302(c)(6), 302(c)(9) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 186(c)(5), (c)(6), (c)(9). The Trust Funds were created pursuant to the written collective bargaining agreements ("Master Labor Agreements") entered into between employers associations for the building and construction industry and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers ("Union").

Defendant Statewide Concrete Barrier, Inc. is a corporation with its principal place of business located in Oakland, California. At all relevant times, it has been an employer within the meaning of Sections 3(5) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(5), 1145, and an employer in the industry affecting commerce within the meaning of Section 3(1) of the LMRA, 29 U.S.C. § 185.

On September 30, 1993, Defendants and the Union entered into a collective bargaining agreement ("Bargaining Agreement") which incorporates, by reference, select provisions of the Master Labor Agreements in existence between the Union and the Associated General Contractors of California, Inc. ("Association"). As a member of the Association, Defendants agreed to comply with all the terms and conditions contained in the provisions of the Master Labor Agreements relating to the payment of employee benefit contributions to the Trust Funds. Defendants further agreed to be bound by all future terms negotiated between the Union and the Association, and to submit to periodic audits of appropriate trust records to ensure compliance and to allow Plaintiffs to verify the balance owing on such payments. The Bargaining Agreement between Defendants and the Union has never been terminated.

According to Plaintiffs, Defendants either failed, neglected, or refused to make timely benefit contributions as required under the terms of the Bargaining Agreement. Plaintiffs also believe that additional

2

contributions may be due and owing, but cannot confirm the amounts until Defendants submit to an audit review.

Plaintiffs filed their Complaint, seeking compensatory damages for any unpaid contributions, liquidated damages, interest, attorney fees and costs. In addition to the monetary relief sought, Plaintiffs also seek an injunctive order directing Defendants to make accounting to Plaintiffs in order to verify and substantiate any contributions outstanding and due. Since this action commenced, Defendants have failed to respond to the Summons and Complaint served to them on February 9, 2005. Plaintiffs assert that Defendants are operating as an ongoing business and are fully capable of making a court appearance should they choose to do so. Default has been entered under Fed. R. Civ. P. 55(b)(1), and Plaintiffs now move this Court to grant default judgment against Defendants pursuant to its authority under Fed. R. Civ. P. 55(b)(2).

### III. JURISDICTION

When considering a motion for default judgement, the court must determine whether it has both subject matter and personal jurisdiction over the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction to enter judgment in the first place."). Also in deciding whether to grant or deny a default judgment, a court must assess the adequacy of the service of process on the party against whom default is requested. *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. January 2, 2001). Here, Defendants were served with the Summons and Complaint on February 9, 2005. Furthermore, proper service of the Summons and Complaint is uncontested.

This Court has subject-matter jurisdiction pursuant to Section 501(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and Section 301(a)(c) of the LMRA, 29 U.S.C. §§ 185(a), (c) which expressly provides the federal district courts a jurisdictional basis over any actions arising under a claim for the recovery of unpaid or delinquent employee benefit contribution. In addition, defendant Statewide Concrete Barrier, Inc. was at

3

all times a corporation, with its principal place of business located in Oakland, California. Moreover, Defendants conduct their business within the Northern District of California, and the events giving rise to this suit occurred within the Northern District of California. Therefore, the Court has personal jurisdiction.

## IV. LEGAL ANALYSIS

The Federal Rule of Civil Procedure 55(b)(2) authorizes a court to order a judgment against a defendant following an entry of default that was made pursuant to Rule 55(a). The decision to grant or deny a plaintiff's motion for default judgment is within the court's sound discretion. *See Aldabe v. Adabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). However such judgments are appropriate where the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered. *See Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983).

The Ninth Circuit has enumerated several factors which the court may consider in exercising its discretion as to whether an entry of default judgment is proper: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim and the sufficiency of the complaint; (3) the sum of money at stake; (4) the possibility of dispute concerning material facts; (5) whether default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

In applying this discretionary standard, the factual allegations contained in the plaintiff's complaint will be taken as true, except for those relating to the amount of damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

### *A. Possibility of Prejudice to the Plaintiff*

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not granted. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here the parties entered into collective bargaining agreements, whereby Defendants were obligated to make timely contributions to Plaintiffs' trust funds. According to Plaintiffs, Defendants breached their obligations under the contract by failing to make any payments as required under the terms of the Bargaining Agreement. In

4

refusing to answer Plaintiffs' Complaint, Defendants are deemed to have admitted the truth of Plaintiffs' averments in the instant action. *See Phillip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Because Defendants defaulted on their regular payment schedule, Plaintiffs have suffered damages not only in the delinquent amounts, but also any interest that would have accrued on the contributed funds. If default judgment is not entered in favor of Plaintiffs, Plaintiffs will be left with no alternative recourse against Defendants and would be unable to collect the amounts owed to them under the Bargaining Agreement. Thus, the failure to grant Plaintiffs motion for default judgement would result in substantial prejudice to Plaintiffs.

### B. Substantive Merits and the Sufficiency of Plaintiffs' Complaint

The second factor in the *Eitel* analysis addresses the probability of the plaintiff succeeding on the merits of its underlying claim as it is set forth in the complaint. A party seeking default judgment must state a valid claim upon which it may recover. *PepsiCo,* 238 F. Supp. 2d at 1175. If the court finds that the plaintiff would have likely succeeded on the merits of its substantive claim had the defendant not defaulted, then default judgment would be appropriate. *See Aldabe*, 616 F.2d at 1089.

Title 29 U.S.C. § 1145 provides, in part, that, "every employer who is obligated to make contributions to a multiemployer plan under the terms of a collectively bargained agreement shall to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement." In the instant case, Plaintiffs brought this ERISA action pursuant to 29 U.S.C. §1132(g), which grants the fiduciaries of an employee-benefits fund a federal cause of action to enforce the employer's obligations imposed by 29 U.S.C. §1145. In order to prevail on a claim for unpaid contributions under an ERISA plan, a plaintiff must prove that: (1) the trust funds are a qualified multi-employer plan as defined by 29 U.S.C. §1002(37); (2) the defendant is an employer obligated to contribute under the plan's terms; and (3) the defendant failed to contribute in accordance to the plan. *Board of Trustee of the Sheet Metal Workers Health Care Plan of N. CA v. Gervasio Environmental Systems*, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004).

Here, in their Complaint, Plaintiffs have alleged all the facts necessary to establish the elements of their claim. Plaintiffs represent various heath and welfare trust funds, and is a multi-employer employee benefit pension plan within the meaning of 29 U.S.C. §1002(37). On September 30, 1993, Plaintiffs entered into the Bargaining Agreement with Defendants. Under the Bargaining Agreement, Defendants were required to make contributions to Plaintiffs' trust funds on behalf of their employees. Shortly thereafter, Defendants failed to pay the amounts owing to Plaintiffs. Accepting all factual allegations as true, the Complaint establishes that Defendants are in clear violation of the terms of the contract. Therefore Plaintiffs have adequately demonstrated a substantial likelihood of success on the merits of their claim.

### *C. Sum of Money at Stake*

The third *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered against the defendant. Under this analysis, the court is directed to take into account the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo*, 238 F. Supp. 2d at 1176; *See also Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted. *See Board of Trustees of Cal. Metal Trades v. Pitchometer Propeller,* 984 F. Supp. 978, 978 (N.D. Cal. 1997). The court may further take into consideration whether "the amount of money at stake is reasonable, properly documented and contractually justified." *See Board of Trustees of N. Cal. Sheet Metal Workers v. Peters*, 2000 U.S. Dist. LEXIS 19065, at *5 (N.D. Cal. December 29, 2000).

In the instant action, the remedy sought by Plaintiffs is limited to the damages that would be reasonably expected to put Plaintiffs in the same position had Defendants' contractual obligations been fulfilled. These damages include (1) the unpaid contributions owing to them under the terms of the Bargaining Agreement; (2) the interest that would have accrued on such amounts had they been paid; (3) the liquidated damages as set forth and agreed upon by the parties in the Bargaining Agreement; and (4) the attorney fees and other expenses representing the cost of enforcing Plaintiffs' contractual entitlements. All these amounts have been documented by Plaintiffs and set forth in a declaration by Plaintiffs' counsel, James

6

P. Watson. Defendants have not challenged the accuracy of the unpaid contribution. Furthermore, Defendants have not disputed that an award of accrued interest or attorney fees would be unduly harsh. Finally there is no indication that liquidated damages set forth under the Bargaining Agreement were unreasonable or punitive.

Given the nature of Defendants' conduct in failing to pay the amounts owed, such resulting damages are reasonable and would naturally be expected to flow from Defendants' breach of contract. Moreover, because Plaintiffs only seek to recover the amount of money owed to them pursuant to the Bargaining Agreement, the sum of money at stake is reasonably proportionate to the harm caused to them by Defendants' breach.

### *D. Possibility of Dispute Concerning Material Facts*

The fourth *Eitel* factor considered the possibility of dispute as to any material facts of the case. In refusing to answer Plaintiffs' Complaint, Defendants are deemed to have admitted the truth of Plaintiffs' averments in the instant action. *See Phillip Morris,* 219 F.R.D. at 494. Upon the entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See Televideo*, 826 F.2d at 917.

Here, Plaintiffs sufficiently alleged all the facts necessary to maintain their claim for relief under ERISA. The allegations of Defendant's breach of Bargaining Agreement is supported by the signed declaration of James P. Watson, who attested to the fact that Defendants have been delinquent in their contributions at the time of the suit. Accordingly, the Court accepts all the factual allegations contained in Plaintiffs' Complaint. Since Defendants have not made any attempts to challenge the accuracy of the Complaint, there exists no dispute of material facts that would preclude the Court from granting Plaintiffs' motion for default judgment.

### *E. Possibility of Excusable Negligence*

The fifth *Eitel* factor contemplates the possibility that the defendant's default was the result of excusable neglect. Under this analysis, the court considers whether the defendant was put on adequate

7

notice to apprise them of the pendency of the action brought against it. *Phillip Morris*, 219 F.R.D. 494 at 500. In addition, the court also considers whether the circumstances surrounding the defendant's failure to answer the complaint are sufficient to excuse or justify its default. *See Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (no excusable neglect because defendant was served with complaint and the notice of entry of default); *See also Pepsico*, 238 F. Supp. 2d at 1177 (because the defendant contacted the plaintiff's counsel to discuss settling the matter after being served with the complaint, the defendant's acquiescence of the lawsuit precluded the possibility of excusable neglect); *But See Eitel*, 782 F.2d at 1472 (defendant's failure to answer is excused because the parties were engaged in settlement negotiations).

In the instant case, Defendants were properly served with both the Complaint and the Notice of the Motion for Default Judgment. Defendant Statewide Concrete Barrier Inc. is an ongoing business that has not entered into bankruptcy or dissolved as a corporate entity. Consequently, Defendants are perfectly capable of responding to any legal action. Despite Plaintiffs' numerous attempts to contact Defendants regarding the pending action, Defendants, nevertheless, refused to answer the Complaint. Furthermore, Defendants have resisted Plaintiffs' multiple requests for correspondence. Because Defendants were properly served with the Notice of Motion for Default Judgment, and at all times, Defendants had the ability and the reasonable opportunity to oppose such action, the possibility of excusable neglect is remote.

### *F. Policy for Deciding on the Merits*

The final *Eitel* factor directs the court to consider the policy of the federal courts which ordinarily disfavors the use of default judgments as the principal method of resolving disputes. As a general rule, in civil actions, "cases should be decided on the merits whenever reasonably possible." *Eitel*, 782 F.2d. at 1472. However this preference alone is not dispositive; rather the court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors. *Pepsico*, 238 F. Supp. 2d at 1177. Furthermore, the "defendant's failure to answer the plaintiff's complaint makes a decision on the merits of a case impractical, if not impossible. *Id* at 1177. Because of this difficulty in proceeding in an

8

action with an unresponsive party, "default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.,* 189 F.R.D. 431, 432 (C.D. Cal. 1999). As a consequence, the policy of encouraging decision of cases on the merits does not necessarily preclude a court from granting a default judgment when the defendant fails to respond.

Here, Defendants have refused to participate in the proceedings brought against them, despite adequate notice and opportunity to do so. Because the Court cannot reach the merits of the instant case without Defendants' participation, default judgement is appropriate despite the policy preferring decision to be made on the merits of a case . Accordingly the Court hereby RECOMMENDS that the District Court grant Plaintiffs' Motion for Default Judgment.

## V. REMEDIES

Generally a court has great discretion in determining damages; however any award in an ERISA action to collect delinquent contributions must be governed by 29 U.S.C. §1132, which considerably circumscribes the latitude given to courts in structuring an appropriate remedy. If the court enters a default judgment in favor of the plaintiff, an award under that section is mandatory, not discretionary. *Northwest Administrators, Inc. v. Albertson's Inc.,* 104 F.3d 253, 257 (9th Cir. 1996). When a judgment in favor of the plan is awarded the district court shall award the plan pursuant to 29 U.S.C. §1132(g)(2):

(A) the unpaid contributions;
(B) interest on the unpaid contributions;
(C) an amount equal to the greater of:
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
(D) reasonable attorney's fees and cost of the action, to be paid by the defendant;
(E) such other legal or equitable relief as the court deems appropriate.

These statutory remedies provide the exclusive remedies for actions to recover delinquent contributions. *Parkhurst v. Armstrong Steel Erectors, Inc.,* 901 F.2d 796, 797 (9th Cir. 1990).

9

Under the language of the statute, an award pursuant to §1132(g)(2) is mandatory if the following three requirements are satisfied: (1) the plan must provide for an such award; (2) the employer must be delinquent at the time the action is filed; (3) the district court must enter a judgment against the employer. *Northwest Administrators,* 104 F.3d at 257; *see also Parkhurst,* 901 F.2d at 797.   In the instant case, all the conditions necessary for an award under §1132(g)(2) are satisfied. Plaintiffs have shown that the Bargaining Agreement contains specific provisions for calculating the contributions to be made as well as the interest and liquidated damages to be paid in the event of delinquency. Since there is no dispute as to the material facts alleged in this case, the Court accepts Plaintiffs' allegation that Defendants have failed to pay their contributions in a timely fashion as required under the Bargaining Agreement. Therefore, because the Court finds Plaintiffs' Motion for Default Judgement should be granted, the statutory damages specifically provided by §1132(g)(2) are appropriate.

Having determined that statutory damages are appropriate, the Court now looks to the amount of the award requested. Generally, upon the entry of default by the court, the factual allegations in the complaint are taken as true. *See Televideo*, 836 F.2d at 917. However, the same presumption does not apply to the allegation of damages. *Id*. As a result, the plaintiff has the burden of proving up the damages that it has purportedly sustained. *See Board of Trustees of Pipe Trades Dist. Council No. 36 v. Drexal Power, Inc.,* 2004 U.S. Dist. LEXIS 15657, at *5 (N.D. Cal. July 26, 2004).

Here, Plaintiffs have failed to meet their burden of proof with respect to the amount of monetary damages requested. The only proof offered in support of the requested relief is the declaration of James P. Watson. This declaration merely affirms the amount and type of award demanded by Plaintiffs: $14,019.14 of unpaid contributions; $128,081.41 in liquidated damages accrued before the filing of the suit; $10,240.00 of additional liquidated damages accrued after the suit was filed; $6,876.00 of prejudgment interest; $3,757.50 of attorney fees; and $1,568.02 of total costs. This declaration, however, does not provide the court with any real information as to how the submitted amounts were arrived upon.

10

In their moving papers, Plaintiffs failed to specify the periods in which Defendants were believed to be delinquent, and failed to enumerate the amounts of each delinquency. In addition, no accounting has been offered showing the calculations of accrued interest and liquidated damages. Simply providing the final monetary amount, without more, is not sufficient to meet the burden of proving damages.

With respect to Plaintiff's request for injunctive relief, the federal district courts are authorized by 29 U.S.C. §1132(g)(2)(E) to award other forms of legal or equitable relief as the court deems appropriate. In this case, because Defendants have been unresponsive to Plaintiffs requests for audits as required under the terms of the Bargaining Agreement, Plaintiffs did not have the opportunity to review Defendants' books and records. Thus, the delinquencies submitted to the Court do not necessarily represent the total amount of funds owed to Plaintiffs. In consideration of these circumstances, the Court recommends granting Plaintiff's request for an injunctive order, requiring Defendants to submit to an audit of the appropriate trust fund records so that Plaintiffs may ascertain the total amount of contributions owed.

## VI. CONCLUSION

Based on the foregoing factors, Federal Rule of Civil Procedure 55(b)(2), statutory law, and case law authority, the Court hereby RECOMMENDS that the district court GRANT Plaintiffs' Motion for Default Judgment but STAY the effect of this judgement until the amount of damages can be determined upon further production of information from Plaintiffs. The Court further RECOMMENDS that the District Court GRANT Plaintiffs' request for injunctive relief and order Defendants to produce all books and records necessary to conduct an audit under the terms of the Bargaining Agreement.

Pursuant to Federal Rule of Civil Procedure 72, a party may serve and file objections to this Report and Recommendation within ten days of being served with a copy of said report.

IT IS SO RECOMMENDED.

Dated: September 2, 2005

MARIA-ELENA JAMES
United States Magistrate Judge

11